And take a minute, sir, if you need. Don't worry about it. But we're ready to hear you as soon as you're ready to come forward. Mr. Forrester, do you agree that we're here on plain error review today? Yes, ma'am. Okay. Thank you. At least on one part. Your Honor, may it please the Court, in Zill Forrester, on behalf of Appellant John Moore, Jr., seeking a reversal in this matter, Appellant should prevail for three different reasons. First, attorney, his retained counsel, Mr. Joseph Bell, his performance was below the standard of care due to Mr. Moore. The second reason is the district court crossed and entered into plea discussion or plea negotiations. Is that the one that you think we're on plain error on, encouraging the Alfred case? Yes. Okay. And third, the district court interfered with the attorney-client relationship. Back to number one. Attorney Bell's performance was certainly below the standard of care due to Mr. Moore. In looking at Appellee's own brief, they write in there part of the facts that at the Rule 11 plea hearing, which happened in April 2013, Mr. Moore said to the magistrate court, maybe when I cooperated with authorities that they would see I didn't do it and that every fiber of my being wants to fight it. That's at JA 27. Right, but then he later said he accepted responsibility, didn't he? Yes. He said, I am guilty, but I don't think I'm guilty of such a harsh sentence, but I leave all in God's hands. I say that because the crux of this case deals with the plea or the effective plea in Rule 11 colloquy taken by the magistrate court in this matter. I will say this, what's important as we're dealing with the first court performance is that if we take a look at JA 478, we see at the bottom of it that it's a letter penned by Mr. Bell, and he's stating his knowledge of Mr. Moore's junior intent. I'm not going to read all of it, but basically he says, I know at one point Mr. Moore wanted to plead guilty. However, he has changed his mind, and now he has decided to go forward with a plea of not guilty. Last sentence in there, I now wish to proceed to trial. And the approximate date of that would have been around the approximate date of the plea colloquy right before it, because there's only three visits, well, essentially three, actually four. Four visits from Rocky Mountain, and let me give you the back story of this. You know what, counsel, I still apologize for interrupting you, but I have so many questions about the Alford plea, and I wonder could I jump you ahead to that? I will jump to the Alford plea. That's my second point. Great. My second point dealing with the Alford plea is the fact that now, say again, the court, the district court, pretty much interfered into the plea negotiations. It all started, if we take a look at J.A. Can I just, what if we were to assume hypothetically, just hypothetically, the district court encouraged the defendant to convert a guilty plea into an Alford plea? Why does that matter from your perspective?  Which started as kind of a standard guilty plea, ended up as an Alford plea. That's where I'm trying to get to. For at least two reasons. Okay. First, it matters because the Alford plea pretty much eviscerates the two points at that time for acceptance of responsibility. It would have been three. As a matter of fact, the first pre-sentence report gave Mr. Moore, Jr., three points for acceptance of responsibility. So the Alford plea pretty much doomed Mr. Moore. He had problems in that respect in terms of acceptance of responsibility. He wasn't cooperating with a probation officer. He refused to provide information. He also was never acknowledging that he'd committed the crime. So how could, how does the, I mean, he wasn't going to get acceptance of responsibility anyway on this record, was he? Concerning the not, I'll deal with the latter point. Concerning him not getting acceptance. Yes, I'm saying you can't have it both ways. It seems you're coming in right away initially and saying, well, this man kept saying he wasn't guilty, and then he was, the court sort of let him withdraw his plea, and then he was ultimately shoehorned into an Alford plea. Well, if he kept saying he wasn't guilty, he was never going to get credit for acceptance of responsibility, was he? And then also failure to comply with the probation officer was a further problem in that regard. So I think that's kind of a dicey argument. Could you tell me why it's not? Fair question and a lot of points. I'll try to respond to all of them. Concerning him not getting acceptance of responsibility, initially he did. And there's a time being that only because he complained against the poor performance, that was withdrawn by the probation officer without him being afforded the right to counsel. Because at that point, Mr. Bell, I believe, filed two motions to withdraw. Now, concerning him not being compliant, I think that it goes back into the poor performance of Mr. Bell. Because Mr. Bell admitted that basically, Your Honor, and this is on the he admitted in court, and he said, Your Honor, I will say this. Mr. Bell testified, and it's cited in our open and brief, page 12. He said he testified that his legal fees were exhausted by April of 2013. At that point, really he had no incentive to come from Rocky Mountain, which is at least a four-hour round trip from Rocky Mountain to Charlotte, where his office is at, to try a case. Because if the funds are exhausted, nearly exhausted in April of 2013, what else is there to travel back and forth on what we presume may be a seven-day trial? Now, to answer your question concerning Mr. Moore not cooperating, this also goes back to the claim of feckless assistance of counsel. Counsel, Mr. Bell himself says, I usually show up a day before to counsel and confer with my client, before the pre-sentence interview. He didn't do it in this situation. Why? Because he said to the court distance was a factor. I don't truly believe logically distance was a factor. He could have driven. He could have flew down to Charlotte. I think finances was a factor. I think certainly in getting back to the Alford plea, I think the court forced Mr. Moore into a difficult situation, and I think certainly there's case law. How did he force him? Tell us how you think he forced him, because I'm looking at the record. I don't see forcing. I don't know what the term would be, what happened. But how did the court say, do you have to enter an Alford plea? It would be in your best interest to enter an Alford plea. You should enter an Alford plea. It seemed to me that what happened in this case was Mr. Moore, was essentially saying all the things somebody says when they enter an Alford plea. I maintain my innocence, but I accept responsibility. And the court's saying, are you entering an Alford plea? So how did the court force him? Because, you know, I am sympathetic that nobody should ever be forced to enter anything. So tell us how this was forcing him. If we take a look at the evaluation report, which is at JA 682 through 693, in there it will tell you that Mr. Moore is susceptible to influence from authority. He's also very talkative. And any sort of influence concerning Christianity. Okay, but where was the influence exercised? Tell us in the record. Give us a. . . Well, it's two parts. It started out at JA 474 when the court said to appointed counsel, well, if he's willing to accept responsibility, we will basically. . . I'll give him the two points for acceptance of responsibility. Basically at the end of the hearing, the court said to the counsel, appointed counsel myself, go to the jail and see before the next hearing, see if he's willing to change his mind. But the court told him on the record that if you do enter the Alford plea, you will be losing acceptance of responsibility. It did. But the court also, and I'm not looking at the site right here, believes at least told him it would be better for him. I will say this. Going to my point, to address my point. In September, the court was not notified that Mr. Moore had changed his mind. As a matter of fact, on JA 499, we see that. . . Okay, but I'm cutting you off, and I apologize, Mr. Forster, but the question is, how did the court force him? You said the court forced him, and I need to find that in the record. And I'm getting at that, Judge Keene. I said to the court, as of several days ago, he had not changed his mind. And that's a quote. The court still went ahead knowing that we have someone who's emotionally frail, someone who's susceptible to advice. Is it the part where he talks about being a martyr, a religious martyr? I would have thought that's what you would point to, given that he was susceptible to this kind of religious influence. Isn't there a part in the transcript where the judge refers to religious martyrs? There is on several different occasions. But I think in answering your good colleague, Judge Keene, when he said the point of force, I am saying that for a district court judge to say to someone who is susceptible to any sort of authority or any sort of patriotic duty, to say to someone, look, I think what you're doing here is an Alford plea, I think that goes beyond just making a kind recommendation. Because, after all, the Alford plea is of no benefit to Mr. Moore. Mr. Moore was already making those same comments before the plea. I mean, you're saying he was susceptible. So what you're saying is he entered the plea. I mean, he was making the same comments pretty much all the way through. So you're saying that he actually entered the plea because the court said, I think you're making an Alford plea. Is that what you mean? No. What I mean is that the influence of authority from a district court judge pushed Mr. Moore over the edge. Can I ask you a question? Usually in these plea cases, cases with judges encouraging pleas, what we're concerned about is that a defendant is giving up a trial right. Giving up, you're waiving your right to trial. That's sort of the background against which we're deciding those cases. The judge encouraged you to waive your most important trial right, your right to trial before a jury. But that's not what's happening here, right? The only question, assuming for a moment that the district court properly or did not abuse discretion by denying the motion to withdraw the original plea. So there's already a plea on the book. The only question is what kind of a plea it's going to be. So I'm trying to figure out whether those other cases that are really driven by this concern that defendants should not be coerced, encouraged to give up their right to a jury trial, how they apply in this different context where there's no jury right at issue. Am I clear? In answering your question, I will say this. Concerning if I'm to hit the court, it sounds as though the court is accepting the straight-up plea that happened when Mr. Bell was... For hypothetically, I'm not making any. I'm just saying if we assume that the district court did not abuse discretion by denying the motion to withdraw that plea. So that plea is on the books when this colloquy starts. How do we think about that, that there is no right to jury trial at issue here? Well, I would respectfully disagree. And I say this because the district court, at least from my understanding, is bound by United States v. Moore at 921 F. 2nd, 240. And so with that, the court, on one hand, is saying, I will not find that Mr. Moore, Jr. meets the standard of the case U.S. v. Moore. However, sua sponte, the court is going to say, you know what, well, let's void that plea out and let's basically do an Alfred plea. And my point is this. It's difficult to stand here and say the court can have it both ways, especially to the detriment of Mr. Moore, Jr. Well, would it have been error for the court to say nothing? In other words, after the court denied the motion to withdraw, what if the court had just said nothing and Mr. Moore kept saying, well, you know, I accept responsibility. I want to fight this. I accept responsibility. What would your position have been if Judge Whitney had said nothing? That Mr. Moore would have a better chance on appeal of even getting the two points for acceptance of responsibility. Even maintaining his innocence after the denial of the motion to withdraw, you think he would have gotten acceptance of responsibility? Well, that's a debatable issue, Your Honor, certainly because I feel as though Mr. Moore, basically the Rule 11 plea here, was not strong enough. And we're saying the court pretty much curtailed his ability to have a great or better chance of appeal. And I think U.S. v. Bellow at 767 fed sub 1065 and also U.S. v. Shaver at 820 fed sub at 1347 supports that. It was error for the court to enhance the defendant's sentence because of the defendant's desire to appeal. Some of the decisions by the district court, we feel as though, was basically in anticipation of appeal. And I will say this, in reading Moore, if it stands for basically the conviction is like the death of a horse, nothing good comes from beating it again. In this case, the district court basically reconvicted him because the district court never withdrew the original plea. It just, in addition, did an Alford plea. So what we're saying is that Mr. Moore was convicted twice for the same federal crime. You're saying he was sentenced twice? Not sentenced twice, but convicted twice. I didn't make that. Convicted twice. Because the district court, if we look at the record, the district court never said, well, you know what? I think the district court says I still find that the magistrate plea was valid. However, if you want to go ahead and do an Alford plea, we can do one. And I think that's not something that's in brief, but it's for argument's sake. I'm saying the mistakes, they go on from there. And so the prejudice, since the Alford plea issue is plain error, since there wasn't an objection, I mean, I know the government objected, but since you did not, we've got to find prejudice. And you're saying then that the prejudice is losing acceptance of responsibility in the calculation for sentencing. Is there anything else that prejudiced him other than losing the acceptance of responsibility? Yes. What prejudiced him was the court did not soundly hear the ineffective assistance of counsel, did not necessarily go over the record, where even in brief, by appellee, they quote and show that there was equivocation. If we peel back the onions to this, we see that Mr. Moore, at no time, even if we take a look at JA 478, he wanted to stand trial. That's how he's prejudiced. He has three definite statements, any defendant, plea guilty or not guilty, take the witness stand or appeal. He was denied that. If the Macy case that came down that said if an attorney, by doing an unconscious act of sleeping, prejudiced his client, and certainly a willful and volitional. Just to be totally clear, this is the prejudice that flows from his ineffective assistance of counsel, right? Not from the judge encouraging it outwardly. Both. I'm saying it flows from the ineffective assistance of counsel and also from the judge basically inciting or change from force to inciting my client, knowing that he is susceptible, as the evaluation report says. Thank you. Thank you. Mr. Enright? Counsel, can you kind of start with this question of what happened here? Are there two guilty pleas on the record now? Is there one? Did the first one get converted over? What happened? Certainly, Your Honor. If I may, may it please the Court, Anthony Enright for the United States. What happened here was the district court, the magistrate judge, conducted an ordinary Rule 11 colloquy during which the defendant admitted his guilt and said, I wish to plead guilty. The court found it to be knowing and voluntary. And that was kind of the end of that proceeding for about a year or six months. And then Mr. Moore sent a pro se letter saying I'm not complaining about his counsel and sought to withdraw it. There were several proceedings during which the court conducted a hearing on the motion to withdraw the plea. And there were four because – Let me ask you this as you proceed there. Certainly, Your Honor. With regard to the magistrate's acceptance of the plea, that had the effect of being final. He did not appeal from that or make any appeal from that per se. You're saying that existed for a year. That is correct, Your Honor. The plea was there. His plea was entered and accepted. What went to the district court was a motion to withdraw his plea. That is correct, Your Honor. So at the district court, we get in this business about the Alford plea. How does it then, as Judge Harris has alluded to, turn into a discussion of what do you plead to as though he's receiving a new plea? Well, I want to make clear the timeline of events is important here because the district court conducted a full hearing on the motion to withdraw the plea, and the term Alford plea did not come up during those proceedings. The court heard evidence. There were a few continuances. The court heard from former defense counsel. The court heard from some family members. I totally get that. At the time that this sentencing proceeding starts, this is a sentencing proceeding, the district court has already denied the motion to withdraw the plea. We've got one plea on the book. So this is what is confusing to me, that I do understand that. And now it looks like coming out of this sentencing hearing, we've got a second plea on the book. So how many times did he plead guilty? Can you have more than one? Your Honor, I don't think the court at sentencing followed what I would call the best practice. What I think the court probably ought to have done was simply find, if you're not going to accept responsibility and you're continuing to insist that you're innocent, I'm going to find that 3E1.1 for acceptance of responsibility does not apply and move on. It would have been orthodox, yes. It would have been orthodox. I do believe we suggested that a couple of times in the district court. That said, to answer a question you asked defense counsel a while ago, I don't think the court's decision to recharacterize it as an Alford plea. So that's what you think happened. I just really am trying to figure out how would one write about what happened here. You think there is still one plea, and what happened is that it was converted. The district court converted the plea and turned it into an Alford. I don't mean to suggest the district court encouraged that. I'm not trying to touch on that issue. But just at the end of the day, we still have one plea. It started out as a regular plea, and now it's an Alford plea. I think that is correct, Your Honor, because the district court made unequivocally clear at sentencing several times. He said there is no chance I'm going to reconsider your motion to withdraw your plea. That is water under the bridge. Another point I would make, Your Honor, is that an Alford plea in our federal system, where you're required to accept a factual basis in every case, is really just a characterization. I don't know that there is a substantive significance between placing a label on a statement of reasons that said, I allow the defendant to convert this to an Alford plea, because the difference constitutionally is an Alford plea requires a factual basis. But in every case. Well, he's saying he was prejudiced because of the acceptance of responsibility component in the deduction of a point. I don't think that's correct, Your Honor, and the reason is because the defendant was unequivocal at sentencing, stating that I recognize that this might mean a longer sentence, because I know you can't give me acceptance of responsibility points, but I'm not guilty. And there's virtually no chance that the district court would have given him acceptance of responsibility points if he maintained that posture. And I believe, honestly, I think the Alford plea exchange arose from the district court's very strong desire to make sure he had every opportunity to accept responsibility. I mean, he came very close to saying, look, if you accept responsibility today, even if you haven't before, even though you've withdrawn your plea, I could seriously consider giving you a reduction for acceptance of responsibility. And Mr. Moore, that's on 514 of the Joint Appendix, and Mr. Moore said, you know, I understand it might mean a longer sentence. Well, what about the fact that the judge is sitting there in court saying this might be an Alford plea? I mean, could a defendant reasonably think that the judge wants me to do this? Maybe I should do it. I'm obviously in a bad position now. Maybe I better go along with what he's saying. Why is that such a stretch? Well, perhaps in some context that might be appropriate, but I do believe Mr. Moore in this case, the court said, what it sounds like you're trying to do sounds like an Alford plea. The court accurately explained what an Alford plea is. It's a guilty plea where you say, I wish to consent to being found guilty, but I don't wish to admit my guilt, and that is an option to you. And when we're talking about interference in the plea process or participating in the plea process and the candidate and some other decisions, this court has made clear that what you're looking for is advocating a particular course of action or coercion or suggesting one will be better for you. And like I said, I don't think this was necessarily the best practice, but I don't think the court actually did that. And the other side of the coin is, as I think all parties agree, this is plain error review, and because the court was unequivocal that he could not have escaped a guilty plea, there's no chance that the kind of prejudice that you need for that kind of scenario would occur, which is a reasonable probability that he would have not entered a guilty plea. Counsel, the part of the colloquy that the whole thing I find somewhat troubling, although I'm not sure it mattered in this case. I'm really not. I'm really struggling with this case trying to figure out if it made a difference converting the plea. But the part at the end where the defense counsel is saying, look, basically to his client, but also to the court, there's no reason someone would switch a regular plea to an algebra plea because all that gets you is now you don't get acceptance of responsibility anymore. So there's no reason to do this. And then the court says, well, you might do it if your conscience is more important to you than some extra time in jail. And then he refers to the martyrs and says, that's why we have martyrs, certain strong religious beliefs, and they put themselves in harm's ways. I totally understand where the defendant is coming from. I mean, that to me, to have a judge sort of appeal to a defendant's religious convictions in connection with everything that has gone on so far, that does seem to me like maybe a judge crossing the line. Your Honor, I could see that perhaps. I think the case would be a little bit stronger in a different context. In this particular sentencing, the defendant had mentioned that previously. He had said, I understand that it could mean more time for me to do this, but my conscience is telling me that I must. And that was before the exchange to which Your Honor alluded. And what I think, in fact, I would suggest that the record suggests that the court was actually reflecting that back in response to defense counsel's request. Well, why would he do this? And the court was saying, well, I understand. It's not a complete irrationality. If you don't believe you're guilty and your conscience won't let you leave guilty or admit your guilt, then that might be a good reason to do that, knowing that you might not get the most beneficial sentence. I don't think that was, however, both the timing, which is sort of after not only had he pleaded guilty, but also I think at that point it was after he had said unequivocally, yes, I understand the difference between an Alford plea and a regular plea, and I definitely want the Alford plea suggested. That could not have influenced his decision on that subject. And I would suggest that in the context of what he previously said before, it was not necessarily coercive or, like I said, I'm not suggesting that this is something we would encourage district courts to do at all. Well, isn't the obvious solution to take a break and just say counsel looks like there's an issue here with regard to an Alford plea, talk to your client rather than to have the court in the suggestive mode? I would think so, Your Honor, if the district court hadn't specifically asked counsel, what do you think about the Alford plea, and he decided instead of objecting to it or saying I would like a moment to discuss it with my client, what you need to do is go through all of the questions that are called for by an ordinary plea and then specifically encourage the court to do that after the court expressed great reluctance to do that. Would it have been error if the court had just ignored Mr. Moore's comments and said nothing about the Alford plea? I don't believe it would have been error. I would have probably suggested that if, and I think our U.S. attorney or assistant U.S. attorney there came close to suggesting just that, Your Honor. The U.S. attorney who was there didn't agree to this Alford plea, right? Can the district court do that, enter a plea over the objection of the government? I believe so, Your Honor. This is a straight-up plea, so there was no plea agreement, and I do believe it is something that's within the discretion of the district court. It's somewhat unusual, I mean, in an ordinary case. So both sides don't have to agree to an Alford plea? Both sides don't have to agree to an Alford plea. I don't believe so, Your Honor. What is required, however, is, and this is sort of outside of an ordinary case, what is required is a factual basis, and ordinarily the factual basis is a proffer by the United States or something that the, or an evidentiary showing by the United States. And so if we were writing on a clean slate, the only thing before the court was an initial Rule 11 hearing, and the United States said, well, we don't agree with this Alford plea and we don't have a factual basis to give this court, the court might not be able to do that. If there were some other evidence out there, Alford made clear that the factual basis can come from any source almost, but that's that. But I do think if the requisites for the plea are met, the district court would have discretion to say, I don't really care what the government thinks about this. Okay. So was this an Alford plea to which he was not entitled, a defamation to this acceptance of responsibility, or was it a straight up plea? Well, Your Honor. Which he potentially would have been entitled to accept. I'd say there's three things I'd like to say in response to that. The first is that. Tell me first, was it an Alford plea or not? Well, the court says it was an Alford plea and wrote that in the Statement of Reasons, so I will have to go with the district court. At the end of the day. So we are to disregard, I guess, the plea before the magistrate and say that the plea here was an Alford plea. And if it was an Alford plea, did the court initiate that discussion? The court, after Mr. Moore said, I do not believe that I am guilty, but I wish to accept responsibility, the court said, it sounds like, and I think not an inaccurate characterization, it sounds like what you're asking to do is to enter an Alford plea. So the court is the first to use the term. At that point in time, the court's discussion is not like he's doing him a favor. He's now taking something away from him by engaging in this colloquy that sounds like this is an Alford plea. That sounds like lawyer-client stuff. Rule 11, as has been alluded to here, refers to discussions between the government's attorney and the defense attorney, not the judge. Yes, Your Honor. The judge ought not get in the middle of that. Yes. But as Judge Ken pointed out, it sounds like it's a prudent thing to do. It seems like to me it's probably the only thing you should do if you're going to suggest an Alford plea is take a recess. Come back and tell us if you want to change your plea. Then it happens outside. Okay, I want to do an Alford plea. But here you've got this engaging, and I'm confused from the beginning because it sounds like to me you've got a straight-up plea. There's no agreement. Straight-up plea, looks like to me, DSR initially, as Lee said, acceptance of responsibility. I guess he doesn't sign that next one. He doesn't check it to say acceptance of it. Well, that's a big deal, acceptance of responsibility, and he comes back. And then this apology occurs, and in the course of this apology, we're not even there for the plea. It was supposed to be sentencing. Suddenly, he enters a plea based upon an Alford, which is a strange animal in and of itself. I think that courts don't even recognize it. We do, but it's a strange animal, an Alford plea. It is. Now, if you had an Alford plea, in this instance, there's really nothing you're getting from it. Why would anyone do it other than the moral aspect of it, I guess, or those other things that would be there. But there's a serious negative that occurs here, and I'm not quite sure what kind of plea, given your representation. You told me this is just a straight-up plea, and that was just surplus there, but the judge did come in and say it. He did say, I converted, I guess, which is kind of strange. But he didn't withdraw the first one, and you pointed that out as though that was of some significance, but that doesn't matter. If you tell him this is an Alford plea, it doesn't matter whether he withdrew it. Apparently, he did grant the motion to withdraw and allow him to. Would that not be the way you'd have to do it? You couldn't have two pleas. So we'd have to construe that he granted the motion to withdraw and then reentered the plea, accepted the plea as an Alford one. That's the only procedural way that could happen, right? I would respectfully disagree, Your Honor, and the reason is because the district court said unequivocally. Let me make sure I understand what you respectfully disagree with. Certainly. Are you disagreeing that the first plea would have to be withdrawn? Yes. Before a judge could enter a second plea of an Alford one. You were saying you could have both a straight-up plea that says, I just plead guilty, and then one that's an Alford one. So you could have two pleas. Well, I would respectfully suggest that what the court did, because it made it unequivocally clear that it was not going to allow Mr. Moore to withdraw his plea. It said that, and that's the basis on which I assume that didn't happen. You represented to me that this is an Alford plea. I represented that to you, and I would stand by it because that's what the court said. There's two things I would like to say about that. It's an Alford plea. It is not the first plea. Well, Your Honor. So what happened to the first plea? I honestly believe they're not materially different. What the court did was say, here's the plea you entered, and I am going to characterize it as an Alford plea. Alford is a Supreme Court plea. Well, it's not materially different. If you got a straight-up plea and you're entitled to at least consideration of probably going to get it except for the responsibility, and then you have an Alford one and you're not going to get it, I'm not saying you would have got it, but you're not going to get it on the second one. Those are two different things, Your Honor. An acceptance of responsibility award is something that you can either get or not get regardless of the kind of plea you entered under the guidelines. I understand. You're going to be going in voluntariness of doing so as to whether the defendant who's in that situation is doing so knowingly and voluntarily. Having entered it straight up, you didn't have to say another word. That's correct. But it goes back in this colloquy of judging, this colloquy that ends up. He's got something different than what he pled before the judge, before the detachment. Well, Your Honor. Ergo, he gets sentenced differently. I don't think he got a different sentence than he conceivably could have received because he said before anyone mentioned Alford, I'm not guilty of this offense. Wouldn't it be clean just to send this back and let the judge make a determination as to what he was doing here and to allow, I mean, it sounds like to me there's a plea here somewhere. I don't know. He could go to trial or something like that. I guess if you set aside the plea, he exposes himself to whatever's out there, but I don't think there was no plea agreement. It was straight up. It's a strange case. It is a bit unusual, Your Honor. I don't disagree with that. Your bottom line is there was one plea. There was one plea, Your Honor. I think the fairest way to describe it is one plea. How do you get rid of the first one? That plea has not gone away. What the district court did was attach the label. No. You said he didn't withdraw it. What I suggest is that the court simply attached the label Alford to the plea he originally entered. Do you think instead of saying two, it has morphed into a difference? It's not two pleas. It's the same plea. Now it's different. That's because Alford is the same as the first plea. There really are not. There's a limited universe of the kinds of plea. You don't want to represent that. You know an Alford plea is not a straight up plea. Well, a straight up plea, as I understand that term, at least. Without the conditions of saying that, he admitted the responsibility and everything in the first one. A straight up plea, Your Honor, is a plea, as I've used that term, and I think we use it in the district court often, is a plea without a plea agreement. And that's what we had in any event. Whether it's a plea without indicating I'm innocent, that's what I'm saying. The first one was simply a plea to say I did it. That is correct. The second one is one, I didn't do it. And he didn't say the magic words. I'm not sure he said the magic words. There's evidence enough to convict me, which is the reason I'm doing it. That's the Alford plea. I mean, it's like the other side. The government has all this evidence. He could be actually innocent, and that happens. I mean, an Alford plea, you can be actually innocent, but you've got the sense to know that the government has all of this evidence on the other side, and I'm going to get up there and give this plea. Yes, Your Honor. I don't believe that an acknowledgment by the defendant that the government has enough evidence to convict me is actually a constitutional requirement. Not a requirement, but under these circumstances, you'd like to know it was knowing and voluntary. There's some impetus for it other than it's a morally right thing to do. I didn't do it, but it got enough evidence. I don't know what the moral obligation is. If I didn't do it, the moral obligation is not to get up and say I did it. Well, to the extent, Your Honor, that if the court concludes that the defendant may not have knowingly and voluntarily either changed his plea or repaired it. What is an Alford plea? What is the Alford plea? What was the basis here? That the defendant says, I didn't do it, but I want to go ahead and plead? What's the basis? I believe the basis on which the court proceeded was that he pleaded guilty and he was bound by that, and at sentencing he said, I no longer stand by my admission that I'm guilty. I do not wish to say that and represent that to this court. And I think the district court wanted to accommodate that desire by Mr. Moore. Well, the way you accommodate that is you withdraw the plea. You don't accommodate it by the end and say, I don't think I'm guilty. Well, you don't think you're guilty. That must be an Alford plea. That's not an Alford plea. I don't think I'm guilty is not enough for an Alford plea. You've got to be able to say, I don't think I'm guilty, but I will plead. And the reason, generally, you're pleading is because you, the government, has so much evidence over there there's no reasonable jurors going to believe me. Well, I don't believe it, and I've got a chance of getting a lesser sentence if I do this. That's generally the reason it comes up. It doesn't come up. I'm exceeding my time. Go ahead and answer. It doesn't just come up, I'm not guilty. And now the judge says an Alford plea. I agree, Your Honor, and I don't think this is the best practice. I do want to respond, though, that the district court did find what it needed to find for an Alford plea, which is a factual basis. The defendant confessed, and his confession was corroborated by a forensic evaluation of his hard drive on which they found hundreds of images of child pornography. And the court found that, and the court said, without objection, that there's a factual basis based on the unobjected two portions of the pre-sentence report. So there was the factual basis required for an Alford plea at that sentencing proceeding. That said, if this court concludes that the district court – Tell me the factual basis. The factual basis being, one, the defendant confessed to viewing more than 2,000 images of child pornography. And, two, that confession – That's the evidence the government has. So you have that. Yes. What else? That evidence was corroborated by a forensic evaluation conducted by the FBI. So essentially you get there by saying the government has enough evidence to convict me, but I didn't do it. That's the essence. But is he clearly saying I didn't do it? This is what I'm – I'm sorry, I don't want to – No, no, no, no, I got that. I feel this could be a related – I never – Mr. Moore. In reading all of these transcripts, he never clearly says I didn't do it. That's correct. He's saying I did it, it wasn't that bad, I wasn't morally guilty, although perhaps literally I did it. I mean, he never clearly walks in and says I didn't do this. I agree with that, Your Honor. It's not an alphabet. Well, Your Honor, what the court has asked at an ordinary –  are you pleading guilty because you are guilty? A statement that said I did it, but I didn't do all of this or whatever is not an alpha plea. An alpha plea is essentially I didn't do it, but you've got enough evidence to show I did it. That is exactly how the court – how the district court characterized an alpha plea to Mr. Moore. That's not what he said. That's not how – this is what may have characterized it. You're right, I'm not saying this court said it all correctly. I'm concerned from the defendant's perspective. Did he do it? And, you know, it's all about knowing involuntarily from my perspective. I don't think Rule 11 approves it so much because you don't really have an agreement. That's kind of a – I don't disagree with that, Your Honor. What I would suggest is that the crux, the bottom line, whatever this court might think of what the district court did at sentencing, because he did have a full plea colloquy, the kind that has been vetted by this court on a host of occasions, designed to ensure that he was knowingly and voluntarily pleading guilty initially before the magistrate, and because the district court conducted a thorough, thorough examination. It doesn't count because you told me that was over. Well, it doesn't – it is over, but it's relevant to the standard of review, which is plain error, and he cannot show that he would not have been convicted. I think it stands for the proposition that his plea before the magistrate was knowingly and voluntarily. The questions I have been posing to you is whether this plea that was before the district judge was knowingly and voluntarily. I understand. That's the definition. The only thing I would say is that if this court concludes that there was any error in that exchange, either an unknowing or involuntary plea or improper interference with plea negotiations, there was no reversible error here because, in any event, he was properly convicted on the plea that he knowingly and voluntarily entered before the magistrate judge. I've taken plenty of this court's time, so unless you have more questions for me, I will. Well, that was a much more straightforward answer. That one you just gave right there, I see where you're going with that. If I was unclear earlier, I apologize. Okay. Okay. Thank you, sir. Mr. Forster. Mr. Forster, as you begin, sir, if you could tell us why in your brief your request for relief, you say the undersigned respectfully prays this court will vacate and remand for resentencing. Yes. Your argument has not been entirely consistent with the request for merely resentencing, has it? Or is that still what you're asking for? No, you're right, Your Honor, because right now, as I stated approximately 20 minutes ago, I'm asking for a reversal of the conviction. So you're absolutely correct. I will say this, going to the point of the Alfred plea. Well, to make sure I understand, you want a reversal of the conviction, or do you want the plea agreement to be withdrawn, at least the plea to be set aside,  I want, to the extent there's a straight-up plea, I want that to be reversed. Set aside. Set aside. If the plea is set aside, send it back to trial, let it be tried, now you can get any sentence that the judge wants to get based upon what he's been pleased to or what he's found guilty of. Yes. Whatever sentence he's got. What sentence did he get? 108 months, Your Honor. And that within the guidelines as well? It's at the low end of the particular guidelines, because it's 108 to 135. However, I understand based on what you're asking, would it not be the case that if we set this aside, this plea, send it back to a new trial, he could get the top sentence? Your Honor, the statutory maximum is 120. But he could get that. I understand that. However, knowing that, He could still get 108 months. Do you agree on that? Yes. Yes. However, knowing that, at least. Well, he could get both. That's correct. But I think if we're taking a look at, and I think I have, if we're taking a look at the, I guess, any sort of miscarriage of justice, and that's to dovetail on appellee when they say it certainly was not best practice, I think that this court should remand, because certainly we feel as though there was a certainly unnecessary interference in the plea process. You were the counselor at that sentencing hearing? Yes, I was. You know, you excoriated Mr. Bale pretty well at this record hearing. You raked him across the cove on this thing. Well, let me wait for you to. No, you don't have to explain that. I'm directly speaking for myself. I'm not questioning you with regard to Ms. Bale. I'm just saying with regard to your performance at this sentencing hearing, you have the judge who then does this, and it's interesting that this time you're quiet in entering a plea based upon what the judge, it seems like it's being handled sort of spontaneously and spontaneous, and no time did you say, Your Honor, I need to defer it to my counsel, because he's entered this plea based upon what's going on in the courtroom, and he's not had advice of counsel as to whether this is in his best interest, other than you did make some statements on the record. It didn't sound like it was in his best interest to do it, because you knew that he was going to lose that acceptance and responsibility, and I'm just wondering about the way that sentencing hearing went. Why didn't you? I will say this. Why didn't you object, if you could answer that? Directly. I did not object because I am arguing that Mr. Bale eviscerated or took away my client's true intent on how to plead back in April 2013. Here again, I'm in a catch-22 at sentencing day to say that, who am I to stand between my client and what he wants to do, even though the best thing I put on record was, if we take a look at the district court even comment before that. You're saying this was what your client wanted to do, and that's why you didn't object? Is that what you're saying? I am saying, and I'll be very clear, I'm saying ultimately I don't think it was sound of my client to do so, and I don't think my client was in a sound mood, mindset, because even the judge will say, and here again, the district court. Why didn't you object if you thought your client was not facing the facts as they were or wasn't dealing with reality or whatever? I have many times. He's under disability. I had many times the district court judge said, we're not going to hear that issue concerning his competency. So that was a dead horse. But what I'm saying, I was caught in a 22. Here I'm accusing Mr. Bell of saying, you did not let the true intent of my client happen, that is to go to trial. But here again, he's manifesting an ill-advised intent to take a plea, and I'm going to catch 22. Do I step in front of my client? Well, no, you could have said, Your Honor, this is the first mention of an Alfred Pilley. I need some time to talk with my client about this, please. Maybe I was not that clear with it, but I said to Your Honor when I was up here before, I said, as of several days ago, he had not changed his mind. And that's at JA-499. I said to the court, he had not changed his mind. That's why I said, the court made a suggestion, which was fine with us. However, for the court to supersede our answer in that suggestion, that's where I feel as though the court overstepped the line. And even the court said, looking at JA Joint Appendix 506, the district court even commented how a few minutes ago he is accepting guilt and then he is retracting it. So if we take a look at Volume 1 of the JA, page 59, we see back on July 29, 2014, this court was on notice that my client was a social neophyte and he is easily influenced or persuaded to do things against even his own best interests. As long as we mention the magic word, Christianity, patriotic American. And that's the gist of what I am saying. My client never really had the chance, because I think the gist of the evaluation report will tell you. He cannot make an ad hoc decision, and that's what he had to do on that sentencing day, make a decision on the fly. Okay, Mr. Forsen, you've answered my question. Let's see if the other judges have any further questions. Okay, thank you very much, sir. We'll ask the clerk to close court, and then we will come down to greet counsel directly. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Barbara Milano Keenan, James A. Wynn, Jr., Pamela A. Harris